```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

 ELIZABETH McCABE, individually and on
 behalf of all others similarly
 situated,                                           MEMORANDUM & ORDER
                                                     24-CV-5510 (EK)(JAM)
                    Plaintiff,


                   -against-

 SUNBEAM PRODUCTS, INC.,

                    Defendant.

--------------------------------------x
```
ERIC KOMITEE, United States District Judge:

        Plaintiff Elizabeth McCabe brings a putative class action against Defendant Sunbeam Products, Inc. ("Sunbeam"), alleging that the "6-Cup Rice Cooker" she purchased on Amazon.com was misleadingly titled.  She took the word "cup" in its name to mean a "standard" eight-fluid-ounce cup, and relied on this statement in making the purchase.  When she received the item, she was surprised to learn Sunbeam was using "cup" to mean a unit smaller than what she terms "standard."

        Sunbeam moves to dismiss for lack of standing and failure to state a claim.  McCabe does have standing to bring her claim.  Nevertheless, we conclude that the product listing was not materially misleading as a matter of law.  Thus, the motion to dismiss for failure to state a claim is granted.

## I. Background

We take the following facts from the complaint (assuming them to be true), and also from documents "integral to" it — that is, documents on which "the complaint relies heavily" for their "terms and effect." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); 5B *Wright & Miller's Federal Practice and Procedure* § 1357 (4th ed.).[1] Accordingly, we consider the Amazon listing screenshots that the parties submitted with their briefs.[2]

McCabe purchased the rice cooker in May 2024 while in New York State. Compl. ¶ 12, ECF No. 1. The product title for the Amazon listing was "Oster 6-Cup Rice Cooker with Steamer, Red," followed by a model number. *Id.* ¶ 16. McCabe believed that "Cup" referred to a "[s]tandard," "eight-fluid-ounce cup." *Id.* ¶ 18.

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

[2] *See Henry v. Nissin Foods (U.S.A.) Co.*, No. 22-CV-363, 2023 WL 2562214, at *1 n.1 (E.D.N.Y. Mar. 17, 2023) (looking to a product's packaging on motion to dismiss because "the full packaging of the Products [were] integral to the Complaint"); Pl.'s Ex. A (hereinafter "Amazon Listing"), ECF No. 20. The defendant submitted the image in the second thumbnail of the Amazon listing. Def.'s Ex. A (hereinafter "Thumbnail 2"), ECF No. 19-1. The defendant also submitted the product user manual to which the Amazon listing linked — though (as discussed below) we need not rely on this item. Def.'s Ex. B (hereinafter "User Manual"), ECF No. 19-1.

As noted above, McCabe filed a screenshot of the Amazon listing with her brief. An excerpt, set out below, shows that the listing contained five images:



     

Amazon Listing 4.³ The first image — enlarged in the screenshot — shows the rice cooker against a white background, with no text.

---

³ References to page numbers for the Amazon listing refer to the ECF pagination within ECF No. 20, and references to page numbers for Thumbnail 2 and the User Manual refer to the ECF pagination within ECF No. 19-1.

3

The second image (submitted by the defense) shows the same photograph, but with a banner running vertically down the left side:



Thumbnail 2, at 4.

In the latter image, Oster is trumpeting four features, the first of which is the product's "6-Cup Cooked Rice Capacity*." *Id.* The asterisk refers the viewer to text lower

4

down on the banner that reads: "Based on 5.33 Ounce Cup." *Id.* This statement is presented on its own against the black background, isolated from any visual clutter. The product listing also contained a hyperlink to the user manual on Sunbeam's website, which repeats the reference to six 5.33-ounce cups of cooked rice.[4]  Compl. ¶ 27.

Sunbeam did not invent the concept of a 5.33-ounce cup out of thin air. It is based on the Japanese Gō, a "traditional unit of measurement for rice that converts to "approximately 180 milliliters." *Traditional Japanese Measurements Hang on in Modern Times*, Nippon (Nov. 10, 2022); *see also id.* (discussing the Gō and noting that "[m]easuring cups for rice are a different size from those used for cooking").[5]

McCabe claims that she did not click on the second thumbnail, and therefore did not see the asterisk or the language to which it pointed. The complaint endeavors to explain why: it "had not occurred to [her] that the Rice Cooker Cup might be smaller than a Standard Cup." Compl. ¶ 18. Thus, she concluded that "the matter of the size of the Rice Cooker Cup did not call for further investigation." *Id.* As noted below, however, the question of what "further investigation" is

---

[4] The User Manual said the rice cooker was capable of cooking "6 (5.33oz) . . . cups of cooked rice." Compl. ¶ 27; User Manual 9 ("The rice cooker is capable of cooking up to 3 full 'rice cooker' Oster® measuring cups of uncooked rice, or 6 (5.33oz) Oster® cups of cooked rice.").

[5] https://www.nippon.com/en/japan-data/h01488/.

5

called for is a question of law — or, at the least, a mixed question of law and fact. Accordingly, while we credit McCabe's (implied) assertion that she did not view the asterisk or disclaimer, we need not credit her assertion that no such review was necessary.

McCabe alleges that Sunbeam's use of "cup" was misleading because the "reference to a 5.33-ounce cup was to . . . *weight* ounces, not . . . *fluid* ounces." *Id.* ¶¶ 31-33. She contends that "[i]f the Product Listing had conspicuously and accurately represented the Rice Cooker Capacity, the price of the Rice Cooker would have been less than what it actually was, and, therefore, [consumers] would have paid that lower amount." *Id.* ¶ 34.

On behalf of the putative class, the complaint asserts claims for deceptive trade practices under the laws of eleven states and the District of Columbia. Since McCabe is the only named plaintiff, we evaluate only her own (New York law) claim at this stage. *Biscone v. JetBlue Airways Corp.*, 681 F. Supp. 2d 383, 386 (E.D.N.Y. 2010) ("As a general rule, until a class action is certified pursuant to Rule 23 of the Federal Rules of Civil Procedure, the claims of potential class members cannot be considered.").

6

## II. Standard of Review

***Standing.*** Before addressing the merits, Sunbeam argues that McCabe lacks standing because she alleges injury only in "conclusory" fashion. On a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court construes "all ambiguities and draw[s] all inferences in [the plaintiff's] favor." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

***Failure to State a Claim.*** Sunbeam also moves to dismiss for failure to state a claim. To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. *E.g.*, *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). At the same

7

time, we do not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

### III. Discussion

#### A. McCabe Has Adequately Alleged Standing

To establish injury, McCabe alleges that the rice cooker's price "would have been less" than what she paid if the Amazon listing had "conspicuously and accurately represented" its true capacity. Compl. ¶ 34. This is a nod to the "price premium" theory of injury. *McCabe v. Nat'l Presto Indus., Inc.*, No. 24-CV-6552, 2025 WL 2371080, at *6 (E.D.N.Y. Aug. 14, 2025). Sunbeam contends that McCabe's allegation is insufficient to establish injury under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), absent specific allegations of "how much she spent on the Rice Cooker or how much more she spent as compared to other alternative Rice Cookers." Def.'s Br. 12, ECF No. 19-2. This argument fails.

The Second Circuit has held that a plaintiff adequately stated an injury-in-fact through her allegation that "the price of the product" she purchased "was inflated as a result of defendant's deception." *Axon v. Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020). The court went on to observe specifically that the "failure to identify the prices of competing products to establish the premium that [the plaintiff] paid" was not fatal to her standing at the motion-to-

8

dismiss stage. *Id.* Because McCabe's allegation is similar to the one at issue in *Axon*, the motion to dismiss for lack of standing is denied.

### B. McCabe Fails to State a Deceptive Trade Practices Claim

McCabe contends that Sunbeam's use of "cup" was misleading because the targeted consumer would understand the word to refer to a "standard" eight-fluid-ounce cup, not the smaller unit that Sunbeam had in mind. Sunbeam responds that the meaning of the term "cup" is ambiguous and that, in these circumstances, the disclaimer forecloses liability.

To state a deceptive advertising claim under Section 349 or 350 of the New York General Business Law, a plaintiff must allege that the "defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). Conduct is materially misleading under Section 349 or 350 when it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* This assessment is properly performed on a motion to dismiss. It is "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739,

9

741 (2d Cir. 2013) (per curiam); *cf. Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 62-63 (2d Cir. 2012) (discussed below).

Under the right circumstances, the "presence of a disclaimer or similarly clarifying language may defeat a claim of deception" under Sections 349 and 350. *Fink*, 714 F.3d at 742. When evaluating whether a representation is materially misleading, courts in this circuit have distinguished between "false" or "misleading" representations, on the one hand, and merely "ambiguous" ones, on the other. *Henry v. Nissin Foods (U.S.A.) Co.*, No. 22-CV-363, 2023 WL 2562214, at *7 (E.D.N.Y. Mar. 17, 2023). "Where the front of a package makes a bold and blatant misstatement about a key element of a product, there is little chance that clarification or context on the reverse of the package will suffice to overcome a deception claim (especially at the motion-to-dismiss stage)." *Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, No. 19-CV-2886, 2021 WL 4502439, at *3 (E.D.N.Y. Sep. 30, 2021) (citing *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018)). "But when the front of the package is better characterized as ambiguous than misleading, courts looking at the alleged misrepresentations in their full context . . . are more likely to grant a motion to dismiss." *Id.* (citing *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666 (E.D.N.Y. 2017)).

1. <u>The Meaning of "Cup"</u>

When a label "could be read to have multiple meanings," it is "ambiguous." *Bynum v. Family Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 311 (S.D.N.Y. 2022) (citing *Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 94 (S.D.N.Y. 2021)). Here, because the word "cup" refers to different measurements in different contexts, Sunbeam's use of the "6-Cup" modifier in the product listing was ambiguous, not misleading or false. *See Henry*, 2023 WL 2562214, at *7; *Engram*, 2021 WL 4502439, at *3-4.

"Cup" has a colloquial meaning; it can refer simply to a "vessel and its contents." *Cup*, Merriam-Webster (last visited Sep. 23, 2025)[6] (listing nine definitions of "cup"). But even when used as a unit of measurement, the word is susceptible of multiple (legitimate) meanings.

"Cup" appears in the U.S. "customary" and British/Commonwealth "metric" systems of measurement. *E.g.*, *How Many Milliliters in One Cup? A Complete Measurement Conversion Guide*, MasterClass (Aug. 3, 2021)[7]; *Cooking*, U.K. Metric Ass'n (last visited Sep. 29, 2025)[8]. As plaintiff points out, the word generally refers to eight fluid ounces the U.S. system for

---

[6] https://www.merriam-webster.com/dictionary/cup.
[7] https://www.masterclass.com/articles/how-many-milliliters-in-one-cup-a-complete-measurement-conversion-guide.
[8] https://ukma.org.uk/practical-help/cooking/.

11

cooking and baking.[9]  But it has a different meaning in traditional Japanese measurement terminology, as indicated above.

Further ambiguity is inherent in the instant context, given that rice expands substantially in the cooking process. Thus, the reasonable reader of a statement of a rice-cooker's capacity will ask: does "cup" refer to the volume of pre-cooked rice, or post-?  The product listing accounted for these questions, and the complaint itself acknowledges them.  *See* Thumbnail 2, at 4 (referring to "6-Cup Cooked Rice" capacity); Compl. ¶ 27 (quoting the user manual's statement that the product "is capable of cooking up to 3 full 'rice cooker' Oster® measuring cups of uncooked rice," or twice that amount of cooked rice).

Perhaps recognizing ambiguities of this kind, the Federal Trade Commission has seen fit to issue rules touching on the subject.  A federal packaging regulation, 16 C.F.R. § 500.16, prescribes the manner of "expression of net quantity" for commodities that are "sold at retail to be used as

---

[9] Even in that context, questions arise as to whether the word connotes volume or weight, and how.  *See, e.g.*, *Widmer v. Hodge*, No. 13-CV-25, 2015 WL 1884329, at *4 n.2 (S.D. Ill. Apr. 24, 2015) ("In the American system of measurement, a cup is 8 fluid ounces.  However, whether a cup is eight ounces by weight depends on the density of the substance measured."); *cf. Spacone v. Sanford, LP*, No. 17-CV-2419, 2017 WL 6888497 (C.D. Cal. May 11, 2017) (taking judicial notice, in considering the meaning of "ounce," that "ounce is the American/British measurement of weight" and "fluid ounce is the American/British measurement of liquid volume").

containers for other materials" — including "cups." In that context, the regulation requires volume to be expressed in both fluid ounces and milliliters. *See id.* (providing, as an example: "6 fl. oz. capacity (177 ml)"). If the word "cup" was entirely unambiguous, no need for this level of specificity would arise.

Given the foregoing, Sunbeam's use of "cup" was subject to at least some natural ambiguity — and was not misleading, let alone outright false. We therefore turn to the efficacy of the accompanying text in Thumbnail 2.

2. The Disclaimer Effectively Addresses Any Ambiguity

When a statement is ambiguous, "reasonable consumers would need additional information to understand the meaning" of the product. *Boswell*, 570 F. Supp. 3d at 96. Courts look to the "packaging as a whole," *Axon*, 813 F. App'x at 705, and consider a disclaimer's "font size, placement, and emphasis." *Henry*, 2023 WL 2562214, at *6; *see also Montgomery v. Stanley Black & Decker, Inc.*, No. 23-735, 2024 WL 939151, at *2 (2d Cir. Mar. 5, 2024) (holding that "fine print may clarify an ambiguous label on packaging").

In the context of an Amazon listing, when facing some ambiguity on what they view as an important topic, a reasonable consumer will ingest more than just a product's title and default image. *See Nguyen v. Algenist LLC*, No. 22 Civ. 13, 2022

13

WL 17251733, at *7 (S.D.N.Y. Nov. 28, 2022) ("[W]hen a statement is ambiguous, every reasonable shopper knows the devil is in the details and thus would seek clarification elsewhere on the package."). Here, very little was required in the way of additional inquiry. The second image contained a prominent disclaimer — the asterisk came immediately after the reference to the "6-Cup Cooked Rice Capacity," and it was in the same-sized font as the subtitles for each of the advertised factors.

This is not stereotypical "fine print," and the consumer was not required to read multiple paragraphs of boilerplate. Indeed, McCabe herself acknowledges that the disclaimer in the second thumbnail was "reasonably legible," though she did not view it. Compl. ¶ 26.

McCabe points to two recent district court cases — both brought by a plaintiff named McCabe — that involve the word "cup" and survived motions to dismiss. One involved a twelve-cup coffee maker and the other a fourteen-cup glass carafe. *Nat'l Presto*, 2025 WL 2371080 (coffee maker); *McCabe v. Conair LLC*, No. 24-CV-5594, slip op. (E.D.N.Y. Sep. 16, 2025) (glass carafe). Neither commands a different outcome here, as they are easily distinguishable.

In *National Presto*, the disclaimer appeared "on the second page of the hyperlinked documents." 2025 WL 2371080, at *1. Unlike here, there was no allegation that the disclaimer in

14

that case appeared directly in the online product listing itself. *See id.* ("A consumer can find the capacity disclaimer only by clicking through hyperlinks in the product listing and scrolling through the pages."). And the pleadings in *Conair* did not allege the presence of *any* disclaimer that could have resolved any ambiguity in the meaning of "cup" with respect to the glass carafe. *See generally* Complaint, *McCabe v. Conair LLC*, No. 24-CV-5594 (E.D.N.Y. Aug. 9, 2024).

McCabe also invokes a recent Second Circuit case for the proposition that Sunbeam's "disclaimer" cannot carry the day at this stage. In *International Code Council v. UpCodes*, the Court of Appeals observed that the "sufficiency of UpCodes's disclaimer depends upon its effect on consumers, which raises factual questions that are not well suited for resolution on a motion to dismiss." 43 F.4th 46, 62 (2d Cir. 2022). At the same time, the court noted that dismissal may be warranted when a disclaimer is "so clear that no reasonable addressee could believe the plaintiffs' allegations of being misled." *Id.* at 63. *UpCodes* does not preclude dismissal here, for a variety of reasons.

First, *UpCodes* did not disturb the well-established rule, set out in *Fink* and regularly followed since, that:

> The primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself. And in determining whether a

15

> reasonable consumer would have been misled by a particular advertisement, context is crucial. For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception.

714 F.3d at 742. *Fink* itself affirmed the dismissal, pursuant to Rule 12(b)(6), of a consumer fraud case filed under N.Y. G.B.L. Section 349, based on a disclaimer — the *precise* posture in which this motion arises.

*UpCodes* used the term "disclaimer" in a very different way than the plaintiff does here. The defendant there had "expressly disclaim[ed] *liability* for any errors or omissions in the information or content on its website." 43 F.4th at 62 (emphasis added). This "disclaimer or similar qualifying language" could not carry the day on a motion to dismiss. *Id.*

*UpCodes*'s usage is consistent with the usual legal meanings of "disclaimer" — as a "renunciation of one's legal right to claim" something, a "repudiation of another's legal right to claim" something, or the writing that memorializes such a renunciation or repudiation. *See Disclaimer*, *Black's Law Dictionary* (12th ed. 2024). The text following the asterisk in this case — a descriptive statement of what kind of "cup" was at issue — is not that kind of disclaimer. Instead, in giving effect to *Fink*'s admonition that "context is crucial," the "5.33 Ounce" text here is properly viewed as part of "the advertising

16

itself" — clarifying language, rather than a limitation of anyone's legal rights. 714 F.3d at 742.[10]

District courts have continued to apply *Fink*'s rule — to both consider disclaimers at this stage and dismiss actions on that basis — even after *UpCodes*. In *Henry*, which post-dates *UpCodes*, the court concluded that the reasonable consumer "would not miss" the given disclaimer, which was also identified by an asterisk. 2023 WL 2562214, at *6. Because the disclaimer "clarifie[d] any misconception created by the label," *id.* at *7, the court granted a motion to dismiss Section 349 and 350 claims on that basis. *Id.* at *9.[11] In *Nguyen*, which also post-dates *UpCodes*, the court acknowledged *UpCodes* but nonetheless considered the clarifying statements on a moisturizer's packaging, invoking *Mantikas* for the proposition that such consideration was appropriate. 2022 WL 17251733, at *7-10.[12]

---

[10] *UpCodes* is also distinguishable because the "disclaimer" in that case was designed to clarify a "provably false" statement. 43 F.4th at 62. Here, as discussed above, plaintiff has not plausibly pled falsity.

[11] Another recent case set out the rule statements in *Fink* and *UpCodes* side by side, thus acknowledging that they continue to coexist peacefully (even if the disclaimer did not carry the day in the end). *See Skillz Platform Inc. v. Papaya Gaming, Ltd.*, No. 24-CV-1646, 2025 WL 438387, at *6 (S.D.N.Y. Feb. 7, 2025) (granting motion to dismiss Section 349 claims in part and denying in part).

[12] There, the disclaimer was not dispositive because the court concluded that a reasonable consumer could read the full ingredient list and nonetheless think that the product's artificial collagen was responsible for the advertised "anti-aging." 2022 WL 17251733, at *8. The court went on to dismiss. The disclaimer in *Nguyen* is distinguishable from the instant disclaimer, where a reasonable consumer would not think it is still possible that each cup of rice is eight fluid ounces after seeing the explicit "*Based on 5.33 Ounce Cup" disclaimer.

17

Accordingly, the instant disclaimer was sufficient to overcome the ambiguity in the product listing, and McCabe's claim must be dismissed.

### IV. Conclusion

For the foregoing reasons, Sunbeam's motion to dismiss is granted pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  The Clerk of Court is respectfully requested to close the case.

SO ORDERED.

      /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:   October 3, 2025
        Brooklyn, New York